UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SAND STORAGE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-303 |
| | § | |
| TRICAN WELL SERVICE, L.P., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON THE PARTIES' DISPOSITIVE MOTIONS

This lawsuit arises out of a contractual dispute between Plaintiff/Counter-Defendant Sand Storage, LLC ("Sand Storage") and Defendant/Counter-Plaintiffs Trican Well Service, L.P. and Trilib Management, LLC (collectively "Trican"). The following pending motions are addressed in this memorandum and recommendation: (1) Plaintiff's Motion To Dismiss Tort Claims Without Prejudice (D.E. 89); (2) Plaintiff's Re-stated Consolidated Motions for Partial Summary Judgment and Related Dispositive Motions (D.E. 90); and (3) Defendants' Motions for Summary Judgment (D.E. 91). The parties do not dispute their having entered into a binding contract, however, there are significant factual disputes as to the parties' performance under the terms of the agreement. Having considered the motions, responses, admissible summary judgment evidence, objections to the summary judgment evidence, and applicable law, it is respectfully recommended the Court **GRANT** Plaintiff's Motion to Dismiss (Plaintiff's) Tort Claims Without Prejudice

(D.E. 89); and **GRANT in part** and otherwise **DENY** each of the parties' respective dispositive motions as set forth below.

It is specifically recommended that the Court **GRANT** summary judgment and dismiss Trican's claims regarding delays in opening the silos and delivering the incorrect grade of sand on December 14, 2011 and January 8, 2012; **GRANT** summary judgment and dismiss Trican's claims for promissory estoppel and negligent misrepresentation; **GRANT** summary judgment and dismiss Sand Storage's claim based on a statutory duty of good faith and fair dealing. It is respectfully recommended that the Court otherwise **DENY** the parties' dispositive motions.

## I.        JURISDICTION

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental and ancillary jurisdiction pursuant to 28 U.S.C. § 1367(a), (b) and Fed. R. Civ. P. 13(a)(g) and (h) over state law claims which are transactionally related to the subject matter at issue. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for case management, including making recommendations as to all dispositive motions. (D.E. 62).

## II.       FACTUAL BACKGROUND

Sand Storage and Trican Well Service LP through its managing partner, Trilib Management, LLC entered in a written contract entitled "Frac Sand Handling and Storage Agreement" on August 29, 2011. (D.E. 1-1; 25 pp. 24-31, 90-2, 91-1). The parties each cite the contract in their respective dispositive motions and responses and

neither disputes the validity of the contract. (D.E. 90-2 and 91-1). Both parties seek the enforcement of the contract and allege the other party breached the terms of the agreement. (D.E. 25, 27). The eight-page contract sets forth the obligations of the parties in detail, however, in summary, Sand Storage agreed to operate and provide storage for sand at its facility in Corpus Christi, Texas to be used by Trican in their oil and gas drilling operations. (D.E. 1-1). Sand Storage agreed to clean and renovate two silos to be used to store the sand and Trican agreed to provide $150,000 to Sand Storage. (D.E. 1-1, p. 3). The first silo was to be ready in approximately 45 days from receiving the deposit with the second silo ready to receive sand within 21 additional days. (D.E. 1-1, p. 3). The storage period was agreed to be 48 months with Trican agreeing to pay $75,000 a month (not including trucking and certain loading services). (D.E. 1-1, p. 2).

Sand Storage received the $150,000 deposit from Trican on September 2, 2011. (D.E. 100-11, p. 3). The terms of the agreement called for the first silo to be ready to receive sand in mid-October, forty-five days from Sand Storage receiving the deposit. (D.E. 1-1, p. 3). Susanne Bonilla, the sole managing member of Sand Storage, LLC, testified the first silo was not ready on October 17, 2011. (D.E. 90-1, p. 1 and D.E. 100-12, p. 10). Ms. Bonilla testified the silos were operational by December 15, 2011. (D.E. 100-12, p. 19). An internal electronic mail message from Scott Berendt, Bulk Plant Manager for Trican, dated December 12, 2011, indicates Trican's position the silos were not ready.

> The test failed at the silos. The hopper they installed doesn't have enough fall. Until they can get to Houston to retrieve a different unloading conveyor, they plan on using an RBT

temporarily. The temp solution is "supposed" to have us up and running late this week. I refuse to guess on the permanent solution time frame.

(D.E. 100-6, p. 2).[1]

On Friday December 16, 2011, Mr. Berndt notified Ms. Bonilla by electronic mail that the Sand Storage facility was not fully operational from a safety stand point.

At this time, [w]e do not want anymore railcars or a barge unloaded into the silos. Sand Storage is not fully functional, from a safety stand point. We will not have our trucks backing into the silos to get loaded. When the silos are fully operational and our trucks can properly navigate into the silo loading area, we will resume loading the silos. Until then, please do not unload anymore sand from railcar or barge, going to the silos.

(D.E. 100-7, p. 2).

On January 12, 2012, Robert "Bob" Harrold,[2] a Sand Storage representative, sent Trican a message by electronic mail that the silos were ready and had been ready since mid-December, 2011. (D.E. 100-8, p. 2).

The parties do not provide much detail about the nature of the parties' business relationship or performance under the terms of the sand storage agreement for the next 18 months, but it appears that Sand Storage stored sand for Trican at its Corpus Christi location during this period.

On August 2, 2013, Trican provided Sand Storage with formal notice of its failure to perform its obligations under the Agreement. (D.E. 100-3, p. 2). The notice identified

---

[1] Plaintiff objects to the consideration of the email messages sent by Scott Berendt based on hearsay. (D.E. 104, p. 2). These email messages are submitted as attachments to the Business Record Declaration of Jack Kardow and are business records admissible pursuant to Fed. R. Evid. 803(6) and are properly considered. (D.E. 100-1).
[2] Mr. Harrold is Susanne Bonilla's husband and was involved in the operation of Sand Storage. (D.E. 91-14, p 5).

two areas in which Trican believed Sand Storage's performance of the contract to have been deficient and set forth several specific examples.

In accordance with Section 8 of the Agreement, the purpose of this letter is to provide Sand Storage with formal notice of its failure to perform its obligation under the Agreement. ***Specifically, Sand Storage has failed to (i) suitably equip the Silos and maintain equipment for storage of Trican's Frac Sand, as required pursuant to Section 2(b) of the Agreement; and (ii) store Trican's Frac Sand in a manner to avoid spillage and damage thereto, as required pursuant to Section 2(e) of the Agreement.*** Descriptions of the circumstances surrounding such failures are as follows: (x) the Silos recently leaked when it rained and, as a result, the Frac Sand contained therein got wet causing Trican to have to dry the sand prior to utilizing, (y) the inside of the 40/70 Silo has deteriorated to the point that concrete from the interior has shed into the Frac Sand contained therein, resulting in contamination and causing Trican to have to screen and re-sieve the last 4 truckloads of 40/70 sand that were removed from that Silo to remove chunks of concrete, and (z) 419,000 lbs. of 100 mesh Frac Sand was discovered missing at the beginning of the year and, more recently, 318,000 lbs. of 40/70 was discovered missing (collectively, the "Lost Sand") as of July, both believed to the result of spillage caused by and ineffective bucket leg conveyor used by Sand Storage for transloading the Frac Sand.

As you can imagine, these failures have already resulted in loss of time, and added expense for Trican. Accordingly, please be advised that Trican intends to terminate the Agreement immediately for default, as its right under Section 8 of the Agreement, unless the parties are able to resolve these issues to their mutual satisfaction within fifteen (15) days from the date of this letter. Additionally, Trican is hereby making a demand in the amount of $37,330.50 for the reimbursement of the Lost Sand. Please

remit payment within thirty (30) days to avoid further legal action.

(D.E. 100-3)(emphasis added).

The letter marked the end of the parties' business relationship and the beginning of this litigation. The parties, through counsel, exchanged letters attempting to explain why each was in compliance with the agreement and why the other party had breached the agreement. (D.E. 90-4, 90-7). Trican maintained Sand Storage did nothing to remedy its deficient performance.[3] Sand Storage maintained the sand was not contaminated and there was nothing to remedy and that Trican had an opportunity to inspect the sand but chose not to. (D.E. 100-12, p. 27). Sand Storage does not dispute Trican's claim that sand was missing or was otherwise lost,[4] however, Sand Storage maintains that a certain amount of loss is inevitable and the amount of loss was within acceptable industry standards.[5]

Sand Storage filed this action on September 30, 2013. (D.E. 1). Trican answered and filed counterclaims on November 6, 2013. On May 12, 2014, Sand Storage filed its First Amended Complaint and Trican filed its First Amended Original Answer and counterclaims on the same day. (D.E. 25, 27). Sand Storage brings the following causes of action: (1) A declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Trican wrongfully terminated the storage agreement; (2) Wrongful termination of the contract; (3) Anticipatory breach or repudiation of the storage services

---

[3] The issue of whether the sand was contaminated with cement is disputed and an important fact. Former Trican employee Brad Brooks testified about significant safety hazards of cement being mixed with frac sand. In short, the cement can clog valves resulting in a blowout, putting people's lives at risk. (D.E. 100-14, pp. 10-13).
[4] *See* deposition testimony of Susanne Bonilla. (D.E. 100-16, pp. 6-7).
[5] Affidavit of Robert Harrold. (D.E. 99-4, pp1-2).

agreement;  (4) Wrongful termination of the contract as a result of dishonest motive;  (5) breach of the implied covenants of the common law of good faith and fair dealings and honest and forthright performance.  (D.E. 25).

Trican raises the following counterclaims: (1) Breach of contract;  (2) Promissory Estoppel;  (3) Negligent Misrepresentation;  (4) Money Had Money Received;  (5) Vicarious Liability; (6) Attorney's Fees.  (D.E. 27).

## III.    PLAINTIFF'S UNOPPOSED MOTION TO DISMISS TORT CLAIMS WITHOUT PREJUDICE

Plaintiff filed its Notice of, and Motion To, Dismiss Tort Claims Without Prejudice.  (D.E. 89).  Plaintiff seeks to dismiss, without prejudice, its claims for wrongful termination the contract as a result of dishonest motive and breach of the implied covenants of the common law of good faith and fair dealings and honest and forthright performance.  The motion is unopposed.

Federal Rule of Civil Procedure 41 governs voluntary dismissal by a plaintiff. A plaintiff's dismissal of suit without prejudice is an "absolute right" if done "before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A); *Harvey Specialty & Supply, Inc. v. Anson Flowline,* 434 F.3d 320, 324 (5th Cir. 2005).  After the opposing party serves either an answer or motion for summary judgment, voluntary dismissal may occur only "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  Even then, however, "as a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party

will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.,* 279 F.3d 314, 317 (5th Cir. 2002).

Therefore, it is respectfully recommended that the Court **GRANT** Plaintiff's Motion to Dismiss Tort Claims Without Prejudice.

## IV.    THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant.  *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The substantive law identifies which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Id.*

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The moving party bears the burden of identifying those portions of the record he or she believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-25.  Once a movant makes a properly

supported motion, the burden then shifts to the non-movant to show the existence of a genuine fact issue for trial. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The non-movant cannot merely rest on the allegations of the pleadings or on unsubstantiated, subjective beliefs. *Anderson*, 477 U.S. at 248-49. The non-movant must establish there are material, controverted facts precluding summary judgment. *Id.* Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(*quoting Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003)("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."); *see also Anderson*, 477 U.S. at 249-52. Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Where the non-movant fails to present evidence to support his or her claims, there can be no genuine issue of material fact because of the complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial. *Id.* at 323.

The parties have each filed objections to certain summary judgment evidence submitted by the opposing party. (D.E. 103, 107, 108). Federal Rule of Civil Procedure

56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In the Fifth Circuit, it is well settled that "the admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir.2004) (quoting Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir.1995)). However, "[i]n reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form." *Tullous v. Texas Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 817 (S.D. Tex. 2008) (citing *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1987)). The undersigned considered the objections and makes this recommendation based on the admissible summary judgment evidence.

**B.      Plaintiff Sand Storage's Motions for Summary Judgment (D.E. 90)**

**1.      Sand Storage's First Motion for Summary Judgment. Plaintiff Sand Storage argues the notice given to Sand Storage by Defendants cannot, as a matter of law, support a claim of termination and forfeiture of the storage services agreement.**

Plaintiff argues the notice of failure to perform its obligations under the agreement was deficient because it was not given in accordance with the terms of the contract. (D.E. 90, pp. 3-12). Plaintiff raises numerous complaints about the notice, including: (1) it was not sent to a person authorized to receive the notice; (2) it was sent to a previous address even after Plaintiff submitted to Trican notification of its change of address; (3) Trican submitted the notice by facsimile to a telephone number not affiliated with Sand

Storage; (4) Sand Storage was not provided time to cure and therefore the notice was deficient.

Plaintiff does not dispute that it did not receive the notice, just that it did not receive the notice in accordance with the terms of the agreement. Robert Wheeler, an attorney representing Sand Storage, sent Trican's attorney a letter dated August 20, 2013, acknowledging that Susan Bonilla received Trican's notice of failure to perform its obligations under the Agreement on August 5, 2013. (D.E. 90-7). Ms. Bonilla testified in her deposition that she received the notice on August 5, 2013. (D.E. 100-12, p. 23). Ms. Bonilla is the sole managing member of Sand Storage, LLC. (D.E. 90-1, P. 1). On August 5, 2013, Plaintiff Sand Storage had actual knowledge and possession of Trican's August 2, 2013 letter notifying Plaintiff of the alleged deficiencies.

The method of delivery of the notice was not unreasonable. After Trican's first attempt to send the facsimile failed, an administrative assistant in Trican's legal department contacted Sand Storage representative Bob Harrold regarding service of the notice. (D.E. 100-17, p. 2). Mr. Harrold is Susanne Bonilla's husband and he was involved in the operations of Sand Storage. (D.E. 91-14, p 5). Mr. Harrold was authorized by Ms. Bonilla to communicate with Trican regarding Sand Storage's operations. (D.E. 100-12, p. 12). Mr. Harrold provided Trican a facsimile number for Trican to serve its notice of default. (D.E. 100-17, p. 2). Trican confirmed the notice was successfully transmitted to Sand Storage on August 2, 2013 at 3:03 p.m. (D.E. 100-17, p. 2).

Plaintiff's arguments and authorities regarding the notice being legally inadequate are unconvincing. Trican cites authority for the proposition that strict compliance with notice provisions is not required if the party received actual notice. "Texas courts have held that strict compliance with written notice provisions is not required if the receiving party was given actual notice." *S. Tex. Elec. Co-op v. Dresser-Rand Co.*, No. V-06-28, 2007 WL 2670063, *9 (S.D. Tex. Sept. 7, 2007)(finding notice given by electronic mail accomplished the purpose of notifying the party that a problem existed); *see Barbier v. Barry, 345 S.W.2d 557, 562 (Tex. Civ. App. – Dallas* 1961 no writ)(holding failure to send letter by registered mail as required by the contract did not destroy the effectiveness of the notice where seller undisputedly received the notice.)

Trican also argues the notice was insufficient because Sand Storage was not given full opportunity to remedy the deficiencies as required by the agreement. (D.E. 90, pp. 6-8). Trican argues that Sand Storage responded on August 20, 2014, but Sand Storage did not remedy the identified deficiencies as required by the contract. (D.E. 100, pp. 16-18). The agreement between the parties requires Sand Storage to *remedy* deficiencies within fifteen days of receiving written notice of the deficiency as opposed to responding to the deficiency. (D.E. 90-2, p. 5). Sand Storage's August 20, 2013 letter to Trican responded to the notice of deficiency. ((D.E. 90-7). However, there is a significant factual dispute about whether the alleged deficiencies were in fact deficiencies and if they were, whether they were adequately remedied by Sand Storage. (D.E. 90-4). Therefore, it is respectfully recommended the Court **DENY** Sand Storage's first motion for summary judgment.

**2. Sand Storage's Second Motion for Summary Judgment. Plaintiff Sand Storage argues Defendants' counterclaims are barred as a matter of law because Sand Storage never received notice and an opportunity to cure.**

Sand Storage argues the terms of the agreement required it to be provided with written notice of the alleged defaults and an opportunity to remedy. (D.E. 90-2, p. 5). Sand Storage argues that the written notice (D.E. 100-3) does not mention the following matters raised in Trican's counterclaims: (1) delays in opening the silos; (2) damages arising from silo opening delays; and (3) delivery of the incorrect grade of sand on December 14, 2011 and January 8, 2012. (D.E. 90, p 13). Trican responds that "once the Storage Agreement terminated pursuant to its own terms, Trican was permitted both by the Storage Agreement and Texas law to pursue money damages for the breaches by Sand Storage." (D.E. 100, pp. 19-20). Trican does not submit any evidence or dispute Sand Storage's evidence that Trican failed to provide notice of the above referenced defaults.

Paragraph 8 of the agreement is titled "Default-By-SAND-STORAGE." (D.E. 1-1, p. 5). A plain reading indicates the parties intended that notice be given before the other party could recover for the other parties' deficient performance. Paragraph 8 reads as follows:

> 8. Default by SAND STORAGE: SAND STORAGE shall in no event be charged with default in the performance of any of its obligations hereunder, unless SAND STORAGE shall have failed to perform such obligations for fifteen (15) days. (or such additional time as is reasonably required to correct any such default) after written notice by TRICAN to SAND STORAGE, properly specifying any obligations

SAND STORAGE has failed to perform. If SAND STORAGE fails to keep, perform, or observe any of the covenants, agreements, terms, or provisions contained in this Agreement that are to be kept, performed or observed by SAND STORAGE, and if SAND STORAGE fails to remedy the same within fifteen (15) days after SAND STORAGE has been given a written notice specifying such default (or such additional time as is reasonably required to correct any such default), then in such event TRICAN may, (a) terminate this Agreement, remove, or cause to be removed, all of the Frac Sand from the Silos or (b) enforce the performance of this Agreement by SAND STORAGE, by any method provided by law or equity. Sand Storage shall agree to be liable for all costs or other damages incurred as a result of the termination including all reasonable expenses incurred by Trican in enforcing its rights hereunder including reasonable attorney's fees.

(D.E. 1-1, p. 8).

Plaintiff maintains Trican did not satisfy all of the conditions precedent to recover under the terms of the contract regarding the three above referenced counterclaims. To succeed with an affirmative defense of breach of conditions precedent, Sand Storage must establish (1) that the contract creates a condition precedent, and (2) that the condition precedent was not performed. *Texas Dept. of Hous. and Community Affairs v. Verex Assurance, Inc.,* 68 F.3d 922, 928 (5th Cir. 1995). Conditions precedent are those acts or events that must occur before a contract arises or before performance under an existing contract is required. *Id.* at 928. *See also Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex. 1976)(holding that condition precedent may relate either to the formation of a contract or liability under the contract). A fair reading of paragraph 8 indicates that the parties intended on receiving notice and an opportunity to

cure before the other party could claim and recover for a deficiency. "SAND STORAGE shall in no event be charged with default in the performance of any of its obligations hereunder, unless . . . (given written notice and opportunity to cure)." Notice of deficiency is a condition precedent of this contract for both termination and the ability to seek damages for alleged deficient performance. Further, the delays happened in late 2011. The notice of default was sent to Sand Storage by Trican on August 2, 2013. (D.E. 100-3). Trican was aware of the delays and chose not to enforce the terms of the agreement as to Sand Storage's delays in preparing the silos until the filing of this lawsuit.

Therefore, it is respectfully recommended that Sand Storage's Second Motion for Summary Judgment be **GRANTED** as to Trican's following counterclaims: (1) delays in opening the silos; (2) damages arising from silo opening delays; (3) delivery of the incorrect grade of sand on December 14, 2011 and January 8, 2012.[6]

3.      **Sand Storage's Third Motion for Summary Judgment. Plaintiff Sand Storage argues Trican cannot maintain a cause of action for delay damages as a matter of law.**

In the preceding section, the undersigned recommends the Court grant summary judgment and dismiss Trican's claims for delay damages. If the Court agrees, it need not address Sand Storage's Third Motion for Summary Judgment because it also relates to delay damages. However, if the Court determines Trican has viable claims for delay

---

[6] For clarity, the undersigned recommends that Sand Storage's motion for summary judgment as to Trican's other breach of contract claims be DENIED.

damages, the Court should consider Sand Storage's Third Motion For Summary Judgment.

Trican alleges breach of contract in its first counterclaim in that Sand Storage failed to have the silos available by the specified time and failed to cure the deficiencies set forth in the notice of deficiency. (D.E. 27, p. 12). Sand Storage argues the terms of the contract clearly state that silos were to be ready "on or about October 15, 2011" and that this language expressed the parties' clear intent that "time was not of the essence." (D.E. 90, pp. 14-15). Trican responds that "[w]hile it is true that just stating a date in a contract does not make time of the essence, time *is* of the essence if there is '***something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence*.'" *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.--Dallas 2008, no pet.) (emphasis added). Trican cites to and submits certain evidence establishing that there is a genuine dispute as to this material fact as to whether Sand Storage failed to have the silos ready on the agreed upon date. (D.E. 100, p. 21-22).[7] Ms. Bonilla testified she understood the timing of the restoration of the silo was important. (D.E. 100-12, p. 13) If a contract is unambiguous, it is for the court to decide whether or not time is of the essence. When a contract is ambiguous, however, whether time is of the essence is a question for the factfinder.[8] In the instant case, the contract is ambiguous and the disputed issue presents

---

[7] Citing to portions of the deposition transcript of Sand Storage representative Susanne Bonilla. *See also* correspondence regarding delays. (D.E. 100-6, p.2; D.E. 100-7, p. 2; and D.E. 100-8, p.2).

[8] *See Ganz v. Lyons Partnership*, 961 F. Supp. 981, 986 (N.D.Tex.1997) ("It is a question for the jury unless the contract expressly makes time of the essence, or the subject matter of the contract is such that the court may take judicial notice of the fact that the parties obviously intended for time to be of the essence.").

a question for the factfinder. Therefore, to the extent Sand Storage argues Trican's claims for delay damages are barred because "time was not of the essence," it is respectfully recommended that Sand Storage's Third Motion for Summary Judgment be **DENIED.**

> **4.** **Sand Storage's Fourth Motion for Summary Judgment. Sand Storage argues Defendants' counterclaim for promissory estoppel fails as a matter of law.**

Sand Storage maintains Trican's counterclaim alleging promissory estoppel is barred because the parties have an enforceable contract. (D.E. 90, p. 16). *Subaru, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002)(promissory estoppel action presumes there is no contract). Trican argues its promissory estoppel claim is a viable alternative to its breach of contract claim and there has been no finding or admission that a valid contract exists. (D.E. 100, p. 23).

A promissory estoppel claim requires proof of "(1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee." *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 959 n. 2 (Tex. App.--Houston [1st Dist.] 1995). "If a valid contract exists covering the alleged promise, a plaintiff cannot recover under promissory estoppel." *Lombana v. AIG Am. Gen. Life Ins. Co.,* No. 01–12–00168–CV, 2014 WL 810858 * 8 (Tex. App.--Houston [1st Dist.] Feb. 27, 2014).

---

Here, the parties each bring causes of action for breach of contract and the evidence supports the existence of a written contract. (D.E. 1-1). Given the existence of a contract, the validity of which neither side has challenged, Trican cannot maintain an action for promissory estoppel. Therefore, it is respectfully recommended that the Court **GRANT** Sand Storage's motion for summary judgment as to Trican's promissory estoppel claim.

> 5. **Sand Storage's Fifth Motion for Summary Judgment. Sand Storage argues Trican cannot recover on their claim of negligent misrepresentation as a matter of law.**

Sand Storage argues Trican cannot maintain claims for negligent misrepresentation because negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not available where a contract was actually in force between the parties. *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640 (Tex. App.--Houston [14th Dist.] 2003, pet. denied); *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114 (Tex. App.--Austin 2003, no pet.); (D.E. 90, p. 18). Trican responds that its demurrage charges are not contractual damages and it also has a viable negligent misrepresentation claim to the extent Sand Storage falsely promised the silos would be ready by October 15, 2011. Trican's claims for negligent misrepresentation relate to matters included in the parties' written agreement and the undersigned respectfully recommends that the Court **GRANT** Sand Storage's motion for summary judgment as to Trican's counterclaims for negligent misrepresentation because the parties have a valid contract regarding the subject matter of the claim.

**6. Sand Storage's Sixth Motion for Summary Judgment. Sand Storage argues Trican cannot recover on its claim for vicarious liability.**

Trican alleged in its Fifth counterclaim that an entity known as Mineral Process Marketing Inc. ("MPM") transloaded sand and did work on the silos and that these services were under the direction and control of Sand Storage. (D.E. 27, p. 13). Trican alleges MPM's performance was deficient and caused Trican damages and that Sand Storage is vicariously liable to Trican under theories of agency, the borrowed servant doctrine, and/or respondeat superior. (D.E. 27. P. 13). Sand Storage argues summary judgment is appropriate for these claims because the terms of the agreement between Trican and Sand Storage do not include any duty of Sand Storage to "transload" sand. (D.E. 90, p. 20). Sand Storage further argues that Trican's counterclaims are mere conclusions not supported by any evidence. (D.E. 90, pp 20-21). Sand Storage managing member Susanne Bonilla averred that Sand Storage did not offload Trican's sand from rail cars. (D.E. 90-1, p. 12). Ms. Bonilla stated that Trican had a separate agreement with MPM for offloading the railcars and that Sand Storage had no right to control how MPM performed its duties. (D.E. 90-1, p. 12).

Ms. Bonilla's affidavit is contradicted by Bob Harrold's deposition testimony that "Mrs. Bonilla was the ultimate decision maker when it came to engaging crews, contractors, and the like, for purposing of repurposing the silos." (D.E. 100-13, p. 5). Bob Harrold testified that he directed the work of the Bronco Terminal crew that was cleaning the top of the silo. (D.E. 100-13, p. 6). The role of MPM in the performance of the agreement and who controlled MPM is disputed. Trican has submitted evidence that

both Ms. Bonilla and Mr. Harrold exerted control of crews working on its premises. Whether this control extended to MPM transloading sand is in dispute and therefore it is respectfully recommended that the Court **DENY** Sand Storage's motion for summary judgment of Trican's claims alleging vicarious liability.

## C. Trican Defendants' Motions for Summary Judgment (D.E. 91)

Trican moves for summary judgment of Sand Storage's claims for (1) breach of contract and wrongful termination and (2) anticipatory breach or repudiation of the storage services agreement arising from the wrongful termination of the services agreement. (D.E. 91, p. 7). Trican points out that the only liability issue in the case is whether the storage agreement was breached, and if so, by whom. Trican maintains summary judgment should be granted in its favor because Sand Storage materially breached the agreement and cannot prevail on its remaining claims. (D.E. 91, p. 7).

### 1. Duty of good faith and fair dealing

Trican's motion first raises the issue of whether Sand Storage is still pursuing a claim based on a "statutory duty" of good faith and fair dealing because it dismissed its tort claims. (D.E. 91, p. 7). Trican argues that there is no duty of good faith expressly provided for in the storage agreement and no such duty may be implied under the UCC. (D.E. 91, p. 8). A duty of good faith and fair dealing does not exist in Texas "unless created by either express contractual language or unless a special relationship of trust and confidence exists between the parties." *Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 299 (Tex. App.--Corpus Christi 1990, writ denied). Trican

further argues that the Texas UCC applies only to the sale of goods and not to a services contract. *Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 912 (Tex. App.--Houston [1st Dist.] 1991, writ denied) (since plaintiff never contended that it was a buyer of goods or that it received non-conforming goods from a seller, UCC did not apply).

Sand Storage responds that the express terms of paragraph 17 of the agreement implicate the UCC, "[t]his Agreement will be governed by, construed under, and enforced in accordance with the laws of the State of Texas including the Texas Uniform Commercial Code." (D.E. 1-1, p. 3). Therefore, Sand Storage maintains the express terms of the agreement provide for the duty of good faith and fair dealing.

The statutory duty of good faith and fair dealing under the Texas Uniform Commercial Code is not applicable in this instant case. Sand Storage dismissed its claims for wrongful termination of the contract as a result of dishonest motive and breach of the implied covenants of the common law of good faith and fair dealings and honest and forthright performance. (D.E. 89). Sand Storage did not allege claims under the Texas UCC or liability of Trican under the UCC. Further, the agreement between the parties is not a contract for the sale of goods and the UCC is inapplicable. The general language in paragraph 17 of the agreement that it will be "governed by, construed under, and enforced in accordance" with the laws of Texas including the Texas UCC do not impose on either party a statutory duty of good faith and fair dealing. Therefore, it is respectfully recommended that the Court **GRANT** Trican's motion for summary judgment to the extent that Sand Storage is still attempting to pursue a claim based on a duty of good faith and fair dealing, separate from its breach of contract claim.

### 2. Breach of contract and anticipatory repudiation

Trican moves for summary judgment in Trican's favor and the dismissal of all of Sand Storage's claims. The parties, in presenting and responding to Trican's motion for summary judgment, set forth essentially the same background and evidence previously considered by the Court and addressed above. Trican presents evidence that Sand Storage lost 700,000 pounds of Trican Sand and points out that Sand Storage does not dispute the unaccounted for sand and failed to remedy the problem. (D.E. 91, pp. 9-12).[9] Sand Storage responds that Trican's notice to Sand Storage was deficient, the loss of sand was within an amount acceptable in the industry, and Sand Storage was not provided an opportunity to remedy any deficiencies.

To establish a breach of contract claim under Texas law, a plaintiff must prove: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the agreement; and (4) damages to the plaintiff resulting from that breach. *See Harris v. Amer. Protection Ins. Co*., 158 S.W.3d 614, 622–23 (Tex. App.-Fort Worth 2005, no pet.); Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). To establish anticipatory breach a party must show: (1) an absolute repudiation of the obligation; (2) a lack of excuse for the repudiation; and (3) the nonrepudiating party's damage. *See Taylor Pub. Co. v. Systems Mktg. Co.*, 686 S.W.2d 213, 217 (Tex. App.--Dallas 1984, writ ref'd n.r.e.). Words or actions can show a party's intent not to perform the contract according to its terms. *See*

---

[9] Trican does not separately raise the issue of its sand allegedly being contaminated by cement inside the Sand Storage silos, but the Court is aware of that evidence, and the evidence disputing those claims.

*Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.-Houston [14th Dist.] 1984, no writ).

Whether a party has breached a contract is a question of law for the judge, not a question of fact for the jury. *Garza v. Southland Corp.,* 836 S.W.2d 214, 219 (Tex. App.--Houston [14th Dist.] 1992, no writ). The judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury. *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n. 3 (Tex. App.--Dallas 1990, no writ).

Under Texas law, the Judge decides certain matters in a breach of contract case and does not have to decide those matters at the summary judgment stage of a case. *McGinnis v. Union Pacific R. Co.*, 612 F. Supp. 776, 789 (S.D. Tex. 2009)(deferring ruling on questions of law at the summary judgment stage in a contract case where questions of fact reserved for the trier of fact were inextricably linked to relevant questions of fact).

The briefing and summary judgment evidence in this case establish two divergent positions, each supported by a certain amount of evidence. The disputed issues relating to the requirements of the contract and the parties' performance are such that these matters should be presented and fully litigated in trial to give the Court a full opportunity to evaluate the evidence and contested matters. Therefore, it is respectfully recommended that Trican's motion for summary judgment of Sand Storage's claims for breach of contract and anticipatory breach be **DENIED**.

### 3. Trican's motion for summary judgment of Sand Storage's claims for damages

Trican moves for summary judgment against Sand Storage for the damages sought to be recovered by Sand Storage. (D.E. 91, pp. 15-21). Sand Storage seeks to recover the "minimum storage fee of $75,000.00 per month for the remaining 27 months, in a total amount of $2,025,000.00." (D.E. 25, p. 20). Trican maintains this measure of damages is contrary to Texas law for the following reasons: (1) the damages do not account for expenses saved by Sand Storage (as a result of the contract being terminated); (2) the minimum fee amounts to an unenforceable penalty; (3) the Texas legislature limited the enforceability of liquidated damages clauses in leases entered into after September 1, 1997. Trican argues damages in a contract case are based on actual damages. *Roberts v. Dehn,* 416 S.W.3d 851, 853 (Tex. App.–Dallas, 1967, no writ). Further, Sand Storage has an obligation to mitigate damages. *White v. Harrison,* 390 S.W.3d 666, 675 (Tex. App. – Dallas 2012, no pet.).

Sand Storage responds that it is not seeking to recover the full storage fee of $2,025,000.00. (D.E. 99, p. 19). Sand Storage offered evidence that Sand Storage's lost profits were $1,283,839.00 which accounted for its reduction in operating expenses. (D.E. 99-1, pp. 5-6). Sand Storage further maintains the damages it is seeking to recover are not otherwise unlawful. There appears to be some misunderstanding between the parties on the damages sought by Sand Storage. However, the undersigned understands Sand Storage's response to mean it is seeking recovery of actual damages that appropriately account for its saved expenses and duty to mitigate. While the measure of

damages may be contested, the Court need not resolve those contested matters at this stage of the proceedings. Therefore, the undersigned respectfully recommends that the Court **DENY** Trican's motion for summary judgment as to Sand Storage's claim for damages.

### D. Sand Storage's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Sand Storage moves to dismiss Trican's counterclaims for promissory estoppel, negligent misrepresentation and vicarious liability pursuant to Fed. R. Civ. P. 12(b)(6) (D.E. 90, p. 24). These counterclaims were addressed in Sand Storage's fourth, fifth and sixth motions for summary judgment. The Court considered and relied on attached exhibits that are matters outside the pleadings. The Court cannot consider this evidence without converting the motion to dismiss into one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P**.** 12(d); *Scanlan v. Tex. A & M Univ*., 343 F.3d 533, 539 (5th Cir. 2003) (holding that district court should have converted a motion to dismiss to a motion for summary judgment before considering the evidence submitted in support of the motion to dismiss).

Applying the summary judgment standard, the undersigned recommended that the Court grant Sand Storage's motions for summary judgment as to Trican's claims for promissory estoppel and negligent misrepresentation. *See supra* pp. 17-18. Regarding Trican's claims for vicarious liability, the Court considered the pleadings and evidence and recommended the Court deny Sand Storage's motion for summary judgment because there is a genuine dispute as to the role of MPM in the performance of the storage

agreement and whether Sand Storage should be vicariously liable for the work of MPM. *See supra* pp. 19-20.

Further, in viewing Trican's claim for vicarious liability in isolation, without considering anything other than the pleadings, the claim satisfies the Rule 12(b)(6) standard. Trican alleges that Sand Storage outsourced a portion of the cleaning of the storage silos and the transloading of Trican's sand to MPM and MPM was subject to Sand Storage's direction and control. Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (emphasizing "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Because Trican's First Amended Original Answer and Counterclaim sets forth sufficient factual detail to satisfy the Rule 12(b)(6) pleading standard, it is respectfully recommended that Sand Storage's motion to dismiss be **DENIED.**

## V.  CONCLUSION AND RECOMMENDATION

It is respectfully recommended the Court **GRANT** Plaintiff's Motion to Dismiss (Plaintiff's) Tort Claims Without Prejudice (D.E. 89) and **GRANT in part** and otherwise **DENY** each of the parties respective dispositive motions as set forth above. It is specifically recommended that the Court **GRANT** summary judgment and dismiss Trican's claims regarding delays in opening the silos and delivering the incorrect grade of sand on December 14, 2011 and January 8, 2012; **GRANT** summary judgment and dismiss Trican's claims for promissory estoppel and negligent misrepresentation; and **GRANT** summary judgment and dismiss Sand Storage's claim based on a statutory duty of good faith and fair dealing. It is respectfully recommended that the Court otherwise **DENY** the remaining portions of the parties' dispositive motions.

Respectfully submitted this 27th day of October, 2014.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).